J-S49030-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN THE INTEREST OF: K.F. A/K/A      :    IN THE SUPERIOR COURT OF
K.L.F.-P., A MINOR      :       PENNSYLVANIA
                 :
                 :
APPEAL OF: K.F., MOTHER      :
                 :
                 :
                 :
                 :    No. 3429 EDA 2015

Appeal from the Decree Entered October 8, 2015 in the
Court of Common Pleas of Philadelphia Count, Family
Division, at No(s): CP-51-AP-0000104-2015, FID 51-
FN-001354-2012

BEFORE: PANELLA, OLSON, JJ., and STEVENS*, P.J.E.

MEMORANDUM BY OLSON, J.:            **FILED JUNE 08, 2016**

K.F. ("Mother") appeals from the decree dated and entered on October 8, 2015, granting the petition filed by the Philadelphia County Department of Human Services ("DHS" or the "Agency"), seeking to involuntarily terminate her parental rights to her dependent, minor child, K.F. a/k/a K.L.F.-P., a female born in April of 2012 ("Child"), pursuant the Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b), and to change Child's permanency goal to adoption under section 6351 of the Juvenile Act, 42 Pa.C.S. § 6351.[1, 2] We affirm.

_____

[1] In a separate decree dated and entered on October 8, 2015, the trial court terminated the parental rights of Child's putative father, Y.W.P. a/k/a P.Y. a/k/a P.W.Y., ("Father"), pursuant to section 2511(a)(1), (2), (5), (8), and
*(Footnote Continued Next Page)*

*Former Justice specially assigned to the Superior Court

On February 13, 2015, DHS filed the petition for involuntary termination and goal change. The trial court set forth the relevant factual background and procedural history of this case in its opinion, which we adopt herein. *See* Trial Court Opinion, 3/9/16, at 1-5. As set forth in the trial court opinion, on October 8, 2015, the trial court held an evidentiary hearing on the petitions. *Id.* at 2. At the time of the hearing, Child was three years old, and had been in care for her entire life.[3] *Id.* At the hearing, DHS presented Wanda Ross, the DHS case manager. N.T., 10/8/15, at 3. DHS then presented Erica Williams, Psy.D., who is a psychologist at Assessment and Treatment Alternatives ("ATA") and Forensic Mental Health Services, as a stipulated expert in child, adolescent, and

*(Footnote Continued)* ───────────

(b). Father has not filed an appeal from the termination of his parental rights, nor is he a party to the present appeal.

[2] We acknowledge that there has been a delay in the disposition of this children's fast track matter. We are also aware of our Supreme Court's admonishment that children's fast track cases should be resolved promptly. *In re: T.S.M.*, 71 A.3d 251, 261 n.21 (Pa. 2013). By way of explanation, the panel notes that the original certified record was due in this Court by December 7, 2015. Owing, at least in part, to staffing shortages in the trial court's chambers, this Court did not receive the certified record until March 10, 2016. As a result, the briefing schedule in this case was delayed by over three months. Thereafter, DHS requested and received a seven-day extension in which to file a brief. The panel concludes that while certain external factors have delayed the disposition in this appeal, the Superior Court has worked diligently toward prompt resolution of this dispute.

[3] In its opinion, the trial court mistakenly referred to Child as a male, while there is no dispute that Child is a female. *See* Trial Court Opinion, 3/9/16, at 2. This typographical error did not affect the trial court's analysis.

- 2 -

family psychology. *Id.* at 34-35. Dr. Williams conducted a parenting capacity evaluation with regard to Mother, and compiled a report in July of 2014. *Id.* at 35. Mother's counsel then cross-examined Ms. Ross about Dr. Williams' parenting capacity report as to Mother. *Id.* at 71. Mother testified on her own behalf. Father was present at the hearing, but he did not testify.

On October 8, 2015, the trial court entered the decree involuntarily terminating Mother's parental rights to Child pursuant to 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act, and changing Child's permanency goal to adoption under section 6351 of the Juvenile Act.

On November 5, 2015, Mother timely filed a notice of appeal along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

In her brief on appeal, Mother raises five questions for this Court's review, as follows:

> 1. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother, K.F.[,] pursuant to 23 Pa.C.S.A. sections [sic] 2511(a)(1) where Mother presented evidence that she tried to perform her parental duties. Additionally, [M]other visited her daughter throughout the time she was in foster care.
>
> 2. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother, K.F.[,] pursuant to 23 Pa.C.S.A. sections [sic] 2511(a)(2) where Mother presented evidence that she has remedied her situation by completing a drug and alcohol program, mental health treatment and attended visits and family school.
>
> 3. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother, K.F.[,] pursuant to 23

- 3 -

Pa.C.S.A. sections [sic] 2511(a)(5) where evidence was provided to establish that the child was removed from the care of Mother. Additionally, [M]other visited with her daughter and maintained contact with her over the last several month.

4. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother, K.F.[,] pursuant to 23 Pa.C.S.A. sections [sic] 2511(a)(8) where evidence was provided to show that Mother is capable of caring for her child after successfully completing drug and alcohol and mental health treatment. Additionally, [M]other visited with her daughter and maintained contact with her over the last several month.

5. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother, K.F.[,] pursuant to 23 Pa.C.S.A. sections [sic] 2511(b) where evidence was presented that DHS never observed the child with the [M]other at any time.

Mother's Brief, at 7.[4]

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial

---

[4] Mother stated her issues on appeal somewhat differently in her concise statement. We, nevertheless, find her challenges to section 2511(a)(1), (2), (5), (8), and (b) preserved for our review. We find that Mother waived her challenge to the goal change, raised in her concise statement, by her failure to raise it in the statement of questions involved portion of her brief. *See Krebs v. United Refining Company of Pennsylvania*, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his or her concise statement of errors complained of on appeal and the statement of questions involved in his or her brief on appeal).

court made an error of law or abused its discretion. *Id.*; *R.I.S.*, [614 Pa. 275, 284,] 36 A.3d 567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, 613 Pa. 371[, 455], 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, [575 Pa. 647, 654-655], 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*

As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, [608 Pa. at 28-30], 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, [539 Pa. 161, 165,] 650 A.2d 1064, 1066 (Pa. 1994).

*In re Adoption of S.P.*, 616 Pa. 309, 325-26, 47 A.3d 817, 826-27 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

Moreover, we have explained:

[t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

- 5 -

*Id.* quoting *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). The trial court terminated Mother's parental rights under sections 2511(a)(1), (2), (5), (8), and (b). We will focus on subsection 2511(a)(2) and (b), which provide as follows:

**§ 2511. Grounds for involuntary termination**

(a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

Mother contends that DHS did not meet its burden of proof with regard to section 2511(a)(2), as there was evidence that she had taken substantial steps toward meeting her Family Service Plan ("FSP") objectives by completing drug and alcohol and mental health treatment. Mother's Brief, at 9, 14-15. Mother complains that DHS never referred Mother to ongoing programs to assist with her mental illness and develop healthy parenting skills. *Id.* at 15. Mother claims that she has the present capacity to care for Child. *Id.*

The Supreme Court set forth our inquiry under section 2511(a)(2) as follows.

> [Section] 2511(a)(2) provides [the] statutory ground[] for termination of parental rights where it is demonstrated by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." . . .
>
> [The Supreme Court] has addressed incapacity sufficient for termination under § 2511(a)(2):
>
> > A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity. The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.

> ***In re Adoption of J.J.***, 515 A.2d 883, 891 (Pa. 1986), *quoting* ***In re: William L.***, 383 A.2d 1228, 1239 (Pa. 1978).

***In re Adoption of S.P.***, 616 Pa. at 326-327, 47 A.3d at 827.

This Court has stated that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. ***In re A.L.D.*** 797 A.2d 326, 337 (Pa. Super. 2002). A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. ***Id.*** at 340.

The trial court found that Child was removed from Mother's care following birth, and that both Child and Mother tested positive for cocaine at that time. Additionally, Mother was diagnosed as having schizophrenia, and had a history of uncontrollable, violent behavior. The conclusion of the parenting capacity evaluation conducted by Dr. Williams was that Mother is unable to provide permanency and safety for Child.[5] Trial Court Opinion, 3/9/16, at 6-7.

The trial court found that Dr. Williams diagnosed Mother with schizophrenia that is very difficult to manage with medications. ***Id.*** at 4. Dr. Williams testified that, although Mother was reportedly in compliance

---

[5] The trial court mistakenly stated, "The child was removed from Mother's care following the birth of the *children* at which time both the child and Mother tested positive." Trial Court Opinion, 3/9/16, at 6-7 (emphasis added). This typographical error did not affect the trial court's analysis.

with treatment and medications, her symptoms were still breaking through. *Id.* at 4. Further, Dr. Williams' major concerns were Mother's lack of predictability and lack of control, and her violent behavior, which has led to Mother being involuntarily committed to hospitals. *Id.* at 4.

The trial court cited Dr. Williams' testimony that Mother does not have the capacity to parent Child, and that she is not capable of providing permanency and safety for Child, because, when Mother loses control, she is violent, people get injured, and those around her are not safe. *See* Trial Court Opinion, 3/9/16, at 4-5. Thus, the trial court assessed the evidence regarding Mother's repeated incapacity to parent Child, which has left Child without essential parental care and subsistence. The trial court also considered the evidence that showed Mother's inability to remedy the conditions and causes of her incapacity to parent Child. *Id.* at 7-8.

As the trial court's factual findings are supported by the record, and the court's legal conclusions are not the result of an error of law or an abuse of discretion, we affirm the trial court's decree with regard to subsection (a)(2). *In re Adoption of S.P.*, 616 Pa. at 325-26, 47 A.3d at 826-27.

Next, we review the termination of Mother's parental rights under section 2511(b). This Court has explained that the focus in terminating parental rights under section 2511(a) is on the parent, but, under section 2511(b), the focus is on the child. *In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*).

Our Supreme Court recently stated as follows.

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 620 Pa. 602, 628-629, 71 A.3d 251, 267 (Pa. 2013).

Mother asserts that the trial court improperly focused on the bond between Child and the foster parents. Mother's Brief, at 18. She claims that the trial court failed to consider the positive bond between Child and her, and the effect on the Child from severing that bond. *Id.* at 18. Mother also asserts that the evidence presented at the hearing indicated that there is a close bond between Child and her. She urges that Ms. Ross could not testify with regard to the interaction between Mother and Child, as she had never supervised visitation between them. *Id.* at 11, 18. Moreover, Mother argues that the termination of her parental rights would not serve Child's physical and emotional needs, and would not be in Child's best interests. *Id.* at 19.

We have stated that, in conducting a bonding analysis, the court is not required to use expert testimony, but may rely on the testimony of social

workers and caseworkers.  *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010).  This Court has also observed that no bond worth preserving is formed between a child and a natural parent where the child has been in foster care for most of the child's life, and the resulting bond with the natural parent is attenuated.  *In re K.Z.S.*, 946 A.2d 753, 764 (Pa. Super. 2008).  It is appropriate to consider a child's bond with his or her foster parent.  *See In re: T.S.M.*, 620 Pa. at 629-630, 71 A.3d at 268.

In addition, in *In re: T.S.M.*, our Supreme Court set forth the process for evaluation of the existing bonds between a parent and a child, and the necessity for the court to focus on concerns of an unhealthy attachment and the availability of an adoptive home.  The Supreme Court stated the following:

> [C]ontradictory considerations exist as to whether termination will benefit the needs and welfare of a child who has a strong but unhealthy bond to his biological parent, especially considering the existence or lack thereof of bonds to a pre-adoptive family. As with dependency determinations, we emphasize that the law regarding termination of parental rights should not be applied mechanically but instead always with an eye to the best interests and the needs and welfare of the particular children involved. *See, e.g., R.J.T.*, [9 A.3d 1179, 1190 (Pa. 2010)] (holding that statutory criteria of whether child has been in care for fifteen of the prior twenty-two months should not be viewed as a "litmus test" but rather as merely one of many factors in considering goal change). Obviously, attention must be paid to the pain that inevitably results from breaking a child's bond to a biological parent, even if that bond is unhealthy, and we must weigh that injury against the damage that bond may cause if left intact. Similarly, while termination of parental rights generally should not be granted unless adoptive parents are waiting to take a child into a safe and loving home, termination may be necessary

- 11 -

for the child's needs and welfare in cases where the child's parental bond is impeding the search and placement with a permanent adoptive home.

[The Adoption and Safe Families Act of 1997, P.L. 105-89] ASFA[,] was enacted to combat the problem of foster care drift, where children . . . are shuttled from one foster home to another, waiting for their parents to demonstrate their ability to care for the children. *See In re R.J.T.*, 9 A.3d at 1186; *In re Adoption of S.E.G.*, [901 A.2d 1017, 1019 (Pa. 2006)]. This drift was the unfortunate byproduct of the system's focus on reuniting children with their biological parents, even in situations where it was clear that the parents would be unable to parent in any reasonable period of time. Following ASFA, Pennsylvania adopted a dual focus of reunification and adoption, with the goal of finding permanency for children in less than two years, absent compelling reasons. *See*, 42 Pa.C.S. § 6301(b)(1); 42 Pa.C.S. § 6351(f)(9) (requiring courts to determine whether an agency has filed a termination of parental rights petition if the child has been in placement for fifteen of the last twenty-two months).

*In re: T.S.M.*, 620 Pa. at 631-632, 71 A.3d at 268-269.

This Court finds that Mother's argument regarding section 2511(b) lacks merit. Again, as the trial court's factual findings are supported by the record, and the court's legal conclusions are not the result of an error of law or an abuse of discretion, we affirm the trial court's decree with regard to subsection (b) on the basis of the discussion in the trial court opinion. *In re Adoption of S.P.*, 616 Pa. at 325-26, 47 A.3d at 826-27. Accordingly, we affirm the decree terminating Mother's parental rights, and changing the permanency goal for Child to adoption.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esc.
Prothonotary

Date: 6/8/2016